IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL BANE, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | NO. 09-2798 |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al., | : | |
| | : | |
| Defendants. | : | |

**OPINION**

Slomsky, J.                                                                                     June 18, 2010

Plaintiff Michael Bane brings this civil rights action against fifteen (15) Defendants, including the City of Philadelphia. Presently before this Court are Defendants' Motions to Dismiss. For the reasons that follow, Defendants' Motions will be granted in part and denied in part.

## I.      BACKGROUND AND PROCEDURAL HISTORY

On June 22, 2009, *pro se* Plaintiff Michael Bane commenced this civil rights action under 42 U.S.C. § 1983 alleging violations of the Second and Fourth Amendments of the United States Constitution; the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"); several provisions of the Pennsylvania Constitution; and the Pennsylvania common law. Defendants are, among others, the City of Philadelphia, Police Commissioner Charles H. Ramsey, Chief Inspector Anthony Dilacqua, Lieutenant Lisa King, Officer David Pinkerton, and Officer Richard Brehant (hereinafter, "City Defendants"). The individual Defendants are sued in their official and personal capacity.

Plaintiff also brought this action under § 1983, RICO and the Pennsylvania Constitution against Commonwealth of Pennsylvania Attorney General Thomas W. Corbett, Jr., Pennsylvania State Police Commissioner Frank Pawlowski, and Special Agents Charles Meissner and Eileen Bonner of the Pennsylvania State Police (hereinafter, "Commonwealth Defendants") in their official and personal capacity. (Doc No. 1). Plaintiff seeks money damages and injunctive relief in the form of the return of his firearms.

On July 17, 2009, Plaintiff filed an Amended Complaint, changing the name of Defendant "Philadelphia Police Department" to "City of Philadelphia Police Department." (Doc. No. 4).[1] Thereafter, City Defendants filed an Answer with Affirmative Defenses (Doc. No. 8). On August 25, 2009, Commonwealth Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 9). Plaintiff filed a Response in Opposition to Commonwealth Defendants' Motion to Dismiss the Amended Complaint (Doc. No. 10). On December 2, 2009, the Court held a hearing on Commonwealth Defendants' Motion.

On January 5, 2010, Plaintiff filed a Motion for Leave to File a Second Amended Complaint to Join Additional Defendants (Doc. No. 19). Neither the Commonwealth Defendants nor the City Defendants opposed this Motion (Doc. No. 20). On January 26, 2010, the Court granted Plaintiff's Motion and ordered Plaintiff to file a Second Amended Complaint within twenty-one (21) days (Doc. No. 23). The Court also ordered Defendants to move or otherwise respond to Plaintiff's

---

[1]On September 10, 2009, pursuant to a stipulation of the parties, the Court entered an Order changing the caption and name of Defendant "Philadelphia Police Department" to "City of Philadelphia." (Doc. No. 12.) The Philadelphia Police Department is a department of the City of Philadelphia and cannot be sued pursuant to 53 P.A. STAT. § 16257. See Regalbuto v. City of Philadelphia, 937 F.Supp. 374, 377 (E.D. Pa. 1995). On September 11, 2009, Defendant City of Philadelphia filed an Answer to the Amended Complaint with Affirmative Defenses (Doc. No. 13).

Second Amended Complaint within fourteen (14) days of service of the amended pleading (Doc. No. 23).

On February 12, 2010, Plaintiff filed a Second Amended Complaint naming as additional City Defendants Philadelphia Police Department employees Sergeant Benjamin Frazier, Detective Robert Zielinski, Captain David Harte, Inspector Jeanette Lake Dooley and Officer Daniel Gorman. These individual Defendants are also sued in their official and personal capacity (Doc. No. 28). After the Second Amended Complaint was filed, the Court denied as moot Commonwealth Defendants' Motion to Dismiss the First Amended Complaint (Doc. No. 31).

On March 2, 2010, City Defendants filed a Motion to Dismiss portions of Plaintiff's Second Amended Complaint under Fed. R. Civ. P. 12(b)(6) (Doc. No. 29)[2] as well as an Answer to the Second Amended Complaint with Affirmative Defenses (Doc. No. 30). By March 15, 2010, Commonwealth Defendants failed to move or otherwise respond to Plaintiff's Second Amended Complaint. On that day, Plaintiff filed a Request For Default to be entered against Commonwealth Defendants for failure to respond (Doc. No. 33). The next day, however, Commonwealth Defendants filed a Motion to Dismiss Plaintiff's Second Amended Complaint in its entirety (Doc. No. 34). Commonwealth Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint is nearly identical to Commonwealth Defendants' Motion to Dismiss Plaintiff's First Amended Complaint. On March 24, 2010, the Court denied Plaintiff's request to enter default against Commonwealth Defendants in view of their filing of the Motion to Dismiss (Doc. No. 38).

---

[2]City Defendants move to dismiss Counts Two (Fourth Amendment Claim), Three (Second Amendment Claim), Six (RICO Claim), Nine (Kidnapping), Eighteen (Personal Liability under 42 Pa.C.S. § 8550), and Nineteen (Punitive Damages) of Plaintiff's Second Amended Complaint, and all claims for monetary relief under the Pennsylvania Constitution.

In addition, on March 21, 2010, Plaintiff filed a Motion to Strike Commonwealth Defendants' Motion to Dismiss as untimely filed (Doc. No. 36). On March 29, 2010, Commonwealth Defendants filed a Response in Opposition to the Motion to Strike (Doc. No. 40), to which Plaintiff filed a Reply (Doc. No. 41). On April 5, 2010, the Court denied Plaintiff's Motion to Strike Commonwealth Defendants' Motion to Dismiss (Doc. No. 43).[3]

Currently before the Court are Motions to Dismiss Plaintiff Michael Bane's Second Amended Complaint filed by City Defendants (Doc. No. 29) and by Commonwealth Defendants (Doc. No. 34). Both Motions to Dismiss were filed pursuant to Fed. R. Civ. P. 12(b)(6). On March 8, 2010, Plaintiff filed a Response in Opposition to City Defendants' Motion to Dismiss (Doc. No. 32). On March 28, 2010, Plaintiff filed a Response in Opposition to Commonwealth Defendants' Motion to Dismiss (Doc. No. 39). For the reasons that follow, the Court will grant in part and deny in part City Defendants' Motion to Dismiss (Doc. No. 29) and will grant in its entirety Commonwealth Defendants' Motion to Dismiss (Doc. No. 34).

---

[3]Plaintiff has also filed two Motions for Sanctions against attorneys for Defendants. On December 22, 2009, Plaintiff filed a Motion for Sanctions pursuant to Fed. R. Civ. P. 11 against Defendant Corbett and Counsel for Commonwealth Defendants, Anthony P. Venditti, Esquire and Susan J. Forney, Esquire (Doc. No. 17). Commonwealth Defendants filed a Response in Opposition to the Motion for Sanctions (Doc. No. 20). On January 15, 2010, the Court denied Plaintiff's Motion for Sanctions (Doc. No. 22). Subsequently, Plaintiff filed a Notice of Appeal of the Order denying the Motion (Doc. No. 26). The issue is currently pending before the Third Circuit Court of Appeals.

On April 5, 2010, Plaintiff filed a Motion for Sanctions pursuant to Fed. R. Civ. P. 11 against Counsel for City Defendants, Nicole S. Morris, Esquire (Doc. No. 42). City Defendants filed a Response in Opposition (Doc. No 46), and Plaintiff filed a Reply in Support of the Motion for Sanctions (Doc. No. 47). On May 11, 2010, the Court denied Plaintiff's Motion (Doc. No. 48).

## II.    STATEMENT OF FACTS

### A.    June 24, 2008 Arrest

Plaintiff's claims stem from an incident with his neighbors and law enforcement officials on June 24, 2008, and shortly thereafter.  On that date, Plaintiff, a Philadelphia resident, asserts he was placed in a state of anxiety and fear because of an impending assault by his next-door neighbor, Angel Quinones. (Pl. Sec. Am. Compl., ¶¶28-34.)  Plaintiff and Quinones have a history of engaging in neighborly altercations regarding, *inter alia*, a shared porch and Quinones' dog. (Id., ¶29.)  On June 24, 2008, after one such confrontation, Plaintiff alleges he heard and saw Quinones and another individual peering through Plaintiff's window, as if they were about to break into the house "for the purpose of assaulting" Plaintiff.  (Id., ¶¶30-31.)  To confront the two men, Plaintiff opened the inside door in the back of his house, while keeping the screen door closed and locked.  (Id., ¶32.)  At that time, the two men threw an unknown red liquid on Plaintiff.  (Id.)  Fearing that the two men intended to seriously injure him, Plaintiff brandished his alleged lawfully-owned handgun.  (Id.)  Quinones and his companion then retreated to Quinones' home next-door.  (Id.)

Defendants Philadelphia Police Officers David Pinkerton and Daniel Gorman arrived at Plaintiff's home after Quinones' mother called the authorities.  (Id., ¶34.)  The Officers entered Plaintiff's home and asked for his version of the incident with Quinones.  (Id.)  Thereafter, the Officers removed Plaintiff from his home, seized Plaintiff's handgun, ammunition and two speed loaders, and transported him to the Fifteenth District police station.  (Id., ¶¶35, 40.)  Once at the police station, Defendant Police Detective Robert Zielinski spoke with Officers Pinkerton and Gorman and charged Plaintiff with aggravated assault, simple assault, reckless endangerment, terroristic threats, possession of an instrument of crime, carrying a concealed firearm without a

license, carrying a firearm on a public street in Philadelphia, and criminal trespass. (Id., ¶36.) The criminal complaint against Plaintiff was eventually dismissed after Quinones failed to appear at several preliminary hearings. (Id., ¶4.)

While in police custody, Plaintiff was approached by Defendants Special Agents Charles Meissner and Eileen Bonner of the Philadelphia Gun Violence Task Force, a unit of the Pennsylvania Office of the Attorney General. Plaintiff agreed to surrender a second gun and seven boxes of .38 special ammunition. (Id., ¶47.) Plaintiff signed a consent form allowing Special Agents Meissner and Bonner to search Plaintiff's house and seize these items. (Id.)

On December 3, 2008, Plaintiff wrote a letter to Defendant Police Commissioner Charles Ramsey asking for the second gun to be returned. Defendant Police Lieutenant Lisa King responded to Plaintiff's letter informing him that an investigation would be conducted and that all future inquiries should be directed to Defendant Police Officer Richard Brehant. (Id., ¶50.) On February 17, 2009, Defendant Lieutenant King wrote a letter to Plaintiff informing him that the City of Philadelphia would not return the firearm and ammunition. (Id.)

On December 17, 2008, Plaintiff filed Philadelphia Police Internal Affairs Complaint No. 08-666, accusing Officer Pinkerton of aggravated assault, kidnapping, official oppression and theft of a handgun. (Id., ¶42.) On February 19, 2009, Plaintiff amended the Internal Affairs Complaint, accusing Lieutenant King and Officer Brehant of stealing Plaintiff's firearm and ammunition. (Id., ¶51.) On April 20, 2009, Defendant Philadelphia Police Inspector Anthony DiLacqua "exonerated Pinkerton of any wrongdoing" and informed Plaintiff of the decision. (Id.) In the Second Amended Complaint, Plaintiff names as Defendants Philadelphia Police Sergeant Benjamin Frazier, Inspector Jeanette Lake Dooley, and Captain David Harte, all of whom allegedly aided Inspector DiLacqua

in making his decision regarding Plaintiff's complaint against Officer Pinkerton. (Id., ¶44.)

B.     <u>Plaintiff's Second Amended Complaint</u>

In the Second Amended Complaint, Plaintiff brings claims set forth in nineteen (19) counts against fifteen (15) named Defendants. City Defendants move to dismiss Counts Two, Three, Six, Nine, Eighteen, and Nineteen of Plaintiff's Second Amended Complaint, and all claims for monetary relief under the Pennsylvania Constitution. Commonwealth Defendants move to dismiss all claims against them, i.e., Counts Two (Fourth Amendment Claim), Three (Second Amendment Claim), Five (Pa. Constitution Article 1, §1 Claim), Six (RICO Claim), Sixteen (Interference with Real Property Claim), Seventeen (Gun Registry claim under 18 Pa.C.S.A. § 6111.4), and Nineteen (Punitive Damages). The Court, in turn, will describe only the Counts currently at issue.[4]

In Count Two, Plaintiff alleges against all individual Defendants except Defendant Pawlowski a violation of the Fourth Amendment to the United States Constitution and Article 1, §8 of the Pennsylvania Constitution. Plaintiff claims that these Defendants committed an "unreasonable seizure" of Plaintiff because Defendants detained, arrested, and charged Plaintiff despite Plaintiff's alleged innocence. Furthermore, Plaintiff claims that individual Defendants failed to return his property in violation of the same sections of the United States and Pennsylvania Constitutions.

In Count Three, Plaintiff alleges a violation of the Second Amendment to the United States Constitution and Article 1, §21 of the Pennsylvania Constitution against all individual Defendants

---

[4]Defendants have not moved to dismiss the following Counts: One (42 U.S.C. §1983 Claim pursuant to <u>Monell v. Dep't of Social Servs. of City of New York</u>, 436 U.S. 658 (1978)); Four (Pa. Constitution Article 1, § 26 Claim); Seven (False Arrest); Eight (Assault and Battery); Ten (Slander); Eleven (Malicious Prosecution); Twelve (Conversion); Thirteen (Intentional Infliction of Emotional Distress); Fourteen (Intentional Interference with Existing and Prospective Contracts); and Fifteen (Trespass to Chattels).

except Defendant Pawlowski. Plaintiff alleges that Defendants violated his right to bear arms when they unlawfully seized Plaintiff's handgun, speed loaders and ammunition. (Id., ¶81.) Under Count Three, Plaintiff explains his theory that individual Defendants were motivated by "their personal opposition to the private ownership of firearms." (Id., ¶82.)

In Count Four, Plaintiff alleges a violation of Article 1, § 26 of the Pennsylvania Constitution against Defendants Pinkerton, Frazier, and Ramsey for discriminating against Plaintiff based on his race. In Count Five, Plaintiff alleges a violation of Article 1, § 1 of the Pennsylvania Constitution against all Defendants for depriving Plaintiff of his freedom, property, reputation, and enjoyment of life's pleasures. (Id., ¶92.)

In Count Six, Plaintiff alleges a violation of RICO, 18 U.S.C. § 1962, against all individual Defendants for conducting a pattern of racketeering activity that affected interstate commerce. (Id., ¶94.) Plaintiff lists as predicate offenses, *inter alia*, kidnapping and theft. Plaintiff asserts that Officers Pinkerton and Gorman committed robbery against Plaintiff because they seized Plaintiff's property illegally through the use of force. (Id., ¶40.) Plaintiff alleges that Officers Pinkerton and Gorman intentionally, willfully, and maliciously failed to give Plaintiff a property receipt after they seized the weapons in order to "frustrate any efforts on the part of Plaintiff to regain possession of the property." (Id.)

In Count Nine, Plaintiff brings a claim of kidnapping in violation of Pennsylvania common law. (Id., ¶¶99-104; 111-114.) In Count Seventeen, Plaintiff alleges that Commonwealth Defendants maintained and used an illegal gun registry which led to the unlawful seizure of Plaintiff's second handgun, speed loaders and ammunition. (Id., ¶¶ 120-121.) Plaintiff claims that Defendant Pennsylvania State Police Commander Frank Pawlowski and Defendant Pennsylvania

Attorney General Thomas Corbett, Jr., controlled and supervised the gun registry. (Id.)

In Count Eighteen, Plaintiff asserts that individual Defendants are subject to personal liability pursuant to the Pennsylvania Subdivision Tort Claims Act, 42 Pa.C.S. § 8550. In this Count, Plaintiff argues that Defendants may not be shielded by the doctrines of sovereign and qualified immunity because their conduct was willful. In Count Nineteen, Plaintiff asserts a claim of punitive damages against all Defendants.

For the reasons that follow, the Court will grant City Defendants' Motion to Dismiss Counts Two, Three, Four, Five, Six, Nine, and Eighteen, and will deny City Defendants' Motion to Dismiss Count Nineteen (in part). The Court will grant Commonwealth Defendants' Motion to Dismiss in its entirety, which covers Counts Two, Three, Five, Six, Seventeen, and Nineteen.

## III.    JURISDICTION AND STANDARD OF REVIEW

This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because several claims are brought under 42 U.S.C. § 1983 and the United States Constitution. This Court has jurisdiction over Plaintiff's state law claims pursuant to supplemental jurisdiction under 28 U.S.C. § 1967.

City Defendants have moved to dismiss certain claims, and Commonwealth Defendants have moved to dismiss all claims, for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). In deciding a Motion to Dismiss pursuant to Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under a reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (reasoning that this statement of the Rule 12(b)(6) standard remains acceptable following U.S. Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) (internal quotations omitted)).

To withstand a Motion to Dismiss under Rule 12(b)(6), "factual allegations must be enough to raise a right to relief above the speculative level." Phillips, 515 F.3d at 234. When a complaint contains well-pleaded factual allegations, "a court should assume their veracity and determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009) (reaffirming rationale set forth in Twombly). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Id. at 1949. In other words, a complaint has to "show" an entitlement to relief with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009). See also McTernan v. City of York, 577 F.3d 521, 532 (3d Cir. 2009) (examining Iqbal's requirement for a complaint to state a plausible claim of relief to survive a Motion to Dismiss); Mann v. Brenner, 2010 WL 1220963, *4 (3d Cir. Mar. 30, 2010) (explaining that a "formulaic recitation of the elements" of a constitutional discrimination claim will not suffice to state a valid cause of action) (citation omitted).

The Court's review of the sufficiency of a *pro se* Complaint is less stringent than a review of pleadings prepared by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). "A *pro se* complaint may be dismissed for failure to state a claim only if it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Joobeen v. City of Phila. Police Dept., 2010 WL 844587, *3 (E.D. Pa. Mar. 4, 2010).

**IV. DISCUSSION**

a. <u>Fourth Amendment</u>

In Count Two of the Second Amended Complaint, Plaintiff alleges a violation of the Fourth Amendment to the United States Constitution and Article 1, § 8 of the Pennsylvania Constitution against all individual Defendants except Defendant State Police Commissioner Pawlowski. City Defendants move to dismiss this claim against all City Defendants except the arresting and charging Officers, i.e., Defendants Pinkerton, Gorman and Zielinski. Commonwealth Defendants move to dismiss this claim against Defendants Attorney General Corbett and Special Agents Meissner and Bonner.

The Fourth Amendment, applied to the States through the Fourteenth Amendment, protects people from unreasonable searches and seizures by government employees. <u>Terry v. Ohio</u>, 392 U.S. 1, 8-9 (1968). Plaintiff argues that his arrest was unsupported by probable cause in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures. Plaintiff further argues that Defendants' refusal to return his firearms constitutes a violation of his Fourth Amendment rights. The Fourth Amendment of the U.S. Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and persons or things to be seized.

U.S. CONST. amend. IV.[5]

---

[5]Article 1, § 8 of the Pennsylvania Constitution is the state analog to the Fourth Amendment of the United States Constitution. <u>Jones v. City of Phila.</u>, 890 A.2d 1188, 1208 (Pa. Cmmw. Ct. 2006), <u>appeal den'd</u>, 909 A.2d 1291 (Pa. 2006). In <u>Jones</u>, an excessive use of force case, the Pennsylvania Commonwealth Court held that there is no separate cause of action for monetary damages for a violation of Article 1, § 8 of the Pennsylvania Constitution. <u>Id.</u> at 1216.

i.      <u>Plaintiff's Arrest</u>

To prevail on his claim for false arrest, Plaintiff must show that arresting Officers Pinkerton and Gorman lacked probable cause to arrest him. <u>Potts v. City of Phila.</u>, 224 F.Supp.2d 919, 932 (E.D. Pa. 2002). Probable cause is a complete defense to a § 1983 unconstitutional arrest claim brought under the Fourth Amendment. <u>Weyant v. Okst</u>, 101 F.3d 845, 852 (2d Cir. 1996). "Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." <u>United States v. Myers</u>, 308 F.3d 251, 255 (3d Cir. 2002) (citing <u>Beck v. Ohio</u>, 379 U.S. 89, 91 (1964)); <u>see also</u> <u>Maryland v. Pringle</u>, 540 U.S. 366, 370-71 (2003); <u>Orsatti v. New Jersey State Police</u>, 71 F.3d 480, 482-83 (3d Cir. 1995).

It is clear that "the reasonableness of [a defendant's] arrest under the Fourth Amendment does not depend on whether it was lawful under [state or local] law." <u>United States v. Laville</u>, 480 F.3d 187, 191 (3d Cir. 2007). Rather, the crucial inquiry into the reasonableness of an arrest is whether under the totality of the circumstances probable cause existed to conduct the arrest, with the lawfulness of the arrest acting as a mere factor. <u>Thomas v. Cianfrani</u>, 2009 WL 1704471, *5 (E.D. Pa. June 17, 2009). Because probable cause is a wholly objective consideration, the officer's subjective motivation is irrelevant. <u>Whren v. United States</u>, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").

---

Federal courts have consistently applied <u>Jones</u> to hold that no private cause of action exists under Article 1, § 8. <u>See</u> <u>Taylor v. Moletsky</u>, 2010 WL 299747, *4 (E.D. Pa. Jan. 22, 2010); <u>Bodnar v. Wagner</u>, 2010 WL 56097, *7 (M.D. Pa. Jan. 5, 2010); <u>Martinez v. Marino</u>, 2007 WL 1775419, *5 (E.D. Pa. June 18, 2007). Accordingly, the Court will dismiss Plaintiff's claim seeking monetary damages for an alleged violation of Article 1, § 8 of the Pennsylvania Constitution.

Whether probable cause exists is typically a question for the jury.  <u>Montgomery v. De Simone</u>, 159 F.3d 120, 124 (3d Cir. 1998).  However, a court may conclude "that probable cause exists as a matter of law if the evidence viewed most favorably to Plaintiff would not support a contrary factual finding."  <u>Merkle v. Upper Dublin School Dist.</u>, 211 F.3d 782, 788-89 (3d Cir. 2000); <u>Estate of Smith v. Marasco</u>, 318 F.3d 497, 514 (3d Cir. 2003).  "Courts are admonished to consider "common sense" when conducting such an inquiry.  <u>Sharrar v. Felsing</u>, 128 F.3d 810, 818 (3d Cir. 1997) (citing <u>Illinois v. Gates</u>, 464 U.S. 213, 274 (1983)).

Here, there was probable cause to arrest Plaintiff on June 24, 2008.  The evidence of record, viewed in the light most favorable to Plaintiff, shows that Officers Pinkerton and Gorman had information that Plaintiff brandished a handgun after his neighbor, Angel Quinones, and a companion threw an unknown red liquid on Plaintiff.  Though Plaintiff remained inside his house and behind a locked screen door, Plaintiff opened the inside door of the house and was face-to-face with Quinones when he brandished the gun.  The record shows that Quinones and his companion retreated forthwith to the house next-door, at which time Quinones' mother called the authorities.  Thereafter, Officers Pinkerton and Gorman arrived at Plaintiff's home and asked Plaintiff for his version of the altercation with Quinones.  After speaking to Plaintiff, Officers Pinkerton and Gorman made the decision to arrest Plaintiff and charge him with the offenses described <u>supra</u>.  In response, Plaintiff makes the speculative assertion that Officers Pinkerton and Gorman and Detective Zielinski "knew that Plaintiff was innocent and did not deserve to be charged with any crime whatsoever." (Pl. Sec. Am. Compl., ¶37.)[6]

---

[6]Plaintiff's Second Amended Complaint is rife with allegations that individual Officers were motivated to "reverse discriminate" against Plaintiff, a Caucasian male, to remedy past hostile and violent actions by the Philadelphia Police Department against racial minorities.  For

Viewing the facts alleged in the light most favorable to Plaintiff, the Court is not persuaded by Plaintiff's argument that his arrest was a mere pretext for a knowing Fourth Amendment violation. Under the totality of the circumstances, there is ample evidence to support a finding that probable cause existed to arrest Plaintiff. That charges against Plaintiff were eventually dropped is merely a factor the Court considers in making this determination. However, "A police officer, after all, is not obligated 'to conduct a mini-trial' before arresting a suspect." Potts, 224 F.Supp.2d at 934 (quoting Brodnicki v. City of Omaha, 75 F.3d 1261, 1264 (8th Cir. 1996); Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore or eliminate every theoretically plausible claim of innocence before making an arrest.").

The Court finds that no reasonable jury could find that Officers Pinkerton and Gorman lacked probable cause to arrest Plaintiff. At the moment the arrest was made, the facts and circumstances within Defendants' knowledge were sufficient "to warrant a prudent man in believing" that Plaintiff had violated the law. Hunter v. Bryant, 502 U.S. 224, 228 (1991) (internal quotation omitted).

example, Plaintiff alleges that Officers Pinkerton, Gorman and Zielinksi "intentionally relied on a statement from [Quinones, of Puerto Rican descent] they knew was false...to cover up Pinkerton's past history of racial discrimination against minorities." (Pl. Sec. Am. Compl., ¶4.) Plaintiff alleges that on June 7, 2006, Officer Pinkerton used excessive force in detaining a fourteen-year-old African American male, beating him with a flashlight, using racial epithets against him, and pressing false charges of assault and resisting arrest. (Id., ¶38.) Plaintiff claims that the victim's mother subsequently filed a lawsuit against Officer Pinkerton and the Philadelphia Police Department. (Id.) Consequently, Plaintiff asserts that "Pinkerton falsely arrested Plaintiff to protect his employment and reputation because of the repercussions from the incident" from June 7, 2006. (Id., ¶39.) Plaintiff concludes that Officer Pinkerton purposely arrested Plaintiff without cause because he "did not want to risk being accused of racism against minorities a second time." (Id.) Plaintiff asserts that Officer Gorman and Detective Zielinski complied with Officer Pinkerton's actions because they "knew of Pinkerton's dilemma." (Id.) These allegations do not overcome the fact that there was probable cause for Plaintiff's arrest on June 24, 2008.

Accordingly, Plaintiff's false arrest claim in Count Two of the Second Amended Complaint will be dismissed.

ii.     <u>Seizure of Firearms</u>

As to the seized firearms and ammunition, Plaintiff alleges that Defendants Lieutenant King, Officer Brehant, Police Commissioner Ramsey, Special Agent Meissner, Special Agent Bonner, and Attorney General Corbett breached a legal duty when they intentionally and maliciously refused to return his firearms and ammunition.[7] Plaintiff further alleges that City Defendants Sergeant Frazier[8], Captain Harte, Police Inspector Dooley, and Police Inspector DiLacqua violated Plaintiff's Fourth Amendment rights because they improperly exonerated Defendant Pinkerton after Plaintiff filed an internal grievance. It appears from the Second Amended Complaint that Plaintiff is alleging in Count Two that the seizures violated the Fourth Amendment and Procedural Due Process under the Fourteenth Amendment.

---

[7]Although Plaintiff has plead the failure to return his property in conjunction with his allegation of a Fourth Amendment violation, the reference to the property in the context here is usually associated with a violation of Plaintiff's Fourteenth Amendment right to Procedural Due Process. <u>See</u> Pl. Memorandum in Opposition to City Defendants' Motion to Dismiss (Doc. No. 32), at 2-3 (arguing that Plaintiff properly stated a procedural due process claim under § 1983); <u>Smith v. Dauphin County Adult Probation Dep't</u>, 2007 WL 2692320, **9-10 (M.D. Pa. Sept. 12, 2007) (analyzing a failure to return property claim under the Fourteenth Amendment); <u>Banks v. Gallagher</u>, 2009 WL 3855687, *20 (M.D. Pa. Nov. 17, 2009) (same).

[8]Plaintiff alleges that Defendant Sergeant Frazier wrongfully dismissed Plaintiff's complaint filed with the Police Department against Officer Pinkerton. Specifically, Plaintiff alleges that "Frazier's motivation to do this was his loyalty to Pinkerton as a fellow police officer. Frazier was also motivated by racism against Plaintiff, who is Caucasian. Frazier knew Plaintiff's neighbor is Puerto Rican. Frazier is African American, and his loyalty to Puerto Ricans as another minority group motivated him to automatically believe Plaintiff's neighbor." (Pl. Sec. Am. Compl., ¶44.)

In part, Plaintiff attributes the alleged unreasonable seizure of his firearms to the "open culture of hostility in the Philadelphia Police Department towards the private ownership of firearms." (Pl. Sec. Am. Compl., ¶49.) Plaintiff contends that Defendants Lieutenant King and Officer Brehant were motivated by the "well-known, but unofficial attitude in the Philadelphia Police Department that private citizens should not own firearms." (Id.) Plaintiff accuses Commissioner Ramsey of perpetuating the "anti-gun" attitude in Philadelphia, as evidenced by his work on behalf of an organization to promote stricter gun control laws. (Id., ¶52.) Further, Plaintiff alleges that Special Agents Meissner and Bonner of the Philadelphia Gun Violence Task Force purposely deceived Plaintiff into surrendering the second handgun and ammunition by intentionally failing to disclose the difficulties Plaintiff would encounter in his attempt to retrieve the firearms from the Police Department. (Id.)

## A. City Defendants

Despite the fact that the weapons and ammunition have not been returned to Plaintiff, he cannot maintain a claim for "intentional or negligent deprivation of property where the state provides an adequate post-deprivation remedy." Potts, 224 F.Supp.2d at 938 (citing Hudson v. Palmer, 468 U.S. 517, 533 (1984) ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available.")).

Pennsylvania Rule of Criminal Procedure 588(a) provides such a remedy:

> A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of property on the ground that he or she is entitled to lawful possession thereof. Such motion shall be filed in the court of common pleas for the judicial district in which the property was seized.

Plaintiff maintains that the post-deprivation procedure codified in Pa. R. Crim. P. 588 is not an adequate remedy. However, Plaintiff concedes that he has not yet attempted to avail himself of this statutory remedy. Rather, Plaintiff relies on the argument that a "long standing policy of Philadelphia City government to be hostile to the private ownership of firearms" renders the post-deprivation remedy inadequate. Plaintiff has failed to allege sufficient facts to "raise the right to relief above the speculative level," as required by the Fed. R. Civ. P. 12(b)(6) standard, supra. Rather, "[c]ourts have upheld [Rule 588] and similar rules as complying with due process by providing adequate post-deprivation remedies." Welsch v. Twp. of Upper Darby, 2008 WL 3919354, *5 (E.D. Pa. Aug. 26, 2008) (citing several cases for this proposition). Consequently, Plaintiff's constitutional claim of unreasonable seizure under the Fourth Amendment and a violation of Procedural Due Process under the Fourteenth Amendment as to City Defendants will be dismissed.[9]

## B. Commonwealth Defendants

As to Commonwealth Defendants, Plaintiff claims that Defendants Meissner and Bonner, Special Agents of the Philadelphia Gun Violence Task Force who interviewed Plaintiff while in police custody, failed to advise him that he would have difficulty in retrieving the weapon that he consented to turn over to them. (Pl. Sec. Am. Compl., ¶78.) He alleges that the agents tricked him into surrendering the firearm, and the agents' deception compromised the voluntariness of his consent to search because he was not fully aware of the ramifications of the seizure. Further,

_____

[9]Because Plaintiff has not plead a meritorious violation of his Fourth and Fourteenth Amendment rights, Plaintiff's claim of supervisory liability against Defendants Sergeant Frazier, Captain Harte, Police Inspector Dooley, and Police Inspector DiLacqua for exonerating Officer Pinkerton must likewise fail.

Plaintiff alleges that Defendant Pennsylvania Attorney General Corbett maintains an "anti-gun" attitude, as evidenced by his political positions, which motivates his allegedly deceptive conduct.

Generally, if voluntary consent is obtained from the individual whose property is being searched, the government may search the premises without a warrant. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) (finding that despite the warrant requirement for searches of private residences, "[i]t is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent"). There is "no talismanic definition of 'voluntariness,' mechanically applicable to the host of situations where the question has arisen." Id. at 224. Voluntariness is a question of fact to be determined by examining the totality of the circumstances. Id. at 227.

Additionally, the Constitution does not require a police officer "to give detailed and specific instructions or advice to owners who seek return of property lawfully seized but no longer needed for police investigation or criminal prosecution." City of West Covina v. Perkins, 525 U.S. 234, 236 (1999). "Once the property owner is informed that his property has been seized, he can turn to these public sources [published, generally available state statutes and case law] to learn about the remedial procedures available to him. The City need not take other steps to inform him of his options." Id. at 241; see also Pascarella v. Swift Transp. Co., Inc., 643 F.Supp.2d 639, 651-52 (D.N.J. 2009) (citing City of West Covina and explaining that "statutory notice is sufficient to satisfy the notice requirements of due process").

Here, under the totality of the circumstances, the Court finds that Plaintiff voluntarily consented to a search of his home and the seizure of the second firearm. While in police custody on June 24, 2008, Plaintiff was approached by Special Agents Meissner and Bonner of the Philadelphia

Gun Violence Task Force. (Pl. Sec. Am. Compl., ¶47.) The Special Agents requested that Plaintiff surrender his firearm and seven boxes of .38 special ammunition to the Philadelphia Police Department. (Id.) Plaintiff agreed to surrender these items and signed a consent form to allow the Special Agents to search Plaintiff's house and seize the property. (Id.)

Plaintiff has failed to demonstrate how Defendants' "deception by omission" invalidates his voluntary consent. No representations were made by the Special Agents regarding the retrieval of the firearms and a mere allegation of "deception by omission" does not undermine the voluntariness of the consent. Consequently, Plaintiff's Fourth Amendment and Fourteenth Amendment claims will be dismissed as to Commonwealth Defendants.[10]

     b.    Second Amendment Claim

In Count Three, Plaintiff alleges a violation of his right to bear arms under the Second Amendment to the United States Constitution and Article 1, § 21 of the Pennsylvania Constitution. The Second Amendment provides that "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear arms, shall not be infringed." U.S. Const. amend II. Defendants argue that Plaintiff is foreclosed from bringing a cause of action under the Second Amendment because the Second Amendment has not been incorporated through the Fourteenth Amendment as being applicable to a state.[11]

---

[10]For the same reasons, Count Sixteen of Plaintiff's Second Amended Complaint, alleging Interference With Real Property by all Defendants, will be dismissed. The alleged tort, for which Plaintiff provides no support in a statute or case law, must likewise fail because Plaintiff has failed to plead how Defendants' conduct unlawfully deprived him of his right to enjoy his property.

[11]In Heller v. District of Columbia, the Supreme Court held that the Second Amendment confers a limited individual right to keep and bear arms. 128 S. Ct. 2783, 2799 (2008). In Heller, the Supreme Court declined to address whether the Second Amendment applies to the

Courts, however, should, if possible, avoid reaching and deciding constitutional questions. United States v. Whitted, 541 F.3d 480, 491-92 (3d Cir. 2008) ("It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case.") (quoting Burton v. United States, 196 U.S. 283, 295 (1905). Accordingly, the Court will refrain from deciding a constitutional question regarding the application of the Second Amendment to the states because a determination is unnecessary in this case.

Here, Plaintiff's Second Amendment argument is misplaced. In this case, the police seized the first firearm as an instrumentality of a crime. Plaintiff gave permission to Special Agents Meissner and Bonner to seize the second firearm and the ammunition. State law also affords Plaintiff the opportunity to apply for the return of the seized items.[12] No government official is barring Plaintiff from obtaining a firearm and none is preventing Plaintiff from availing himself of

---

states through the Fourteenth Amendment because the issue was "not presented by this case." Id. at 2813 n.23; see also United States v. Fincher, 538 F.3d 868, 873 n.2 (8th Cir. 2008) (noting that Heller "did not address the question of whether the Second Amendment is incorporated through the Fourteenth Amendment and thus applicable to the states").

Since Heller, a circuit court split has arisen as to whether the individual right to bear arms should apply to the states. Compare Maloney v. Cuomo, 554 F.3d 56, 58-59 (2d Cir. 2009) (finding that the Second Amendment applies only to limitations the federal government seeks to impose) (citing Presser v. Illinois, 116 U.S. 252, 265 (1886)) and Nat'l Rifle Ass'n of America v. City of Chicago, 567 F.3d 856, 857-60 (7th Cir. 2009) (refusing to apply the Second Amendment to the states) (citing United States v. Cruikshank, 92 U.S. 542 (1875)), cert. granted, 130 S.Ct. 48 (U.S. Sept. 30, 2009) (No. 08-1521) with Nordyke v. King, 563 F.3d 439, 457 (9th Cir. 2009) (finding that "the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment and applies it against the states and local governments"). The Third Circuit has not decided whether the Second Amendment applies to states.

[12]The Special Agents cannot be faulted for taking what appears to be appropriate police action to protect the safety of the public, given the fact that they had information that Plaintiff had already pointed a firearm at his neighbor and a lethal situation may have arisen when he returned home if the agents did not seize the second weapon.

the procedure for the return of his firearm. Moreover, no law has been cited that infringes upon Plaintiff's right to obtain a firearm. The Second Amendment does not bar police from seizing the items taken in this case.

  c.  RICO Claim

  In Count Six, Plaintiff alleges that Defendants violated the civil RICO statute, 18 U.S.C. § 1962(c). Section 1962(c) of RICO provides as follows:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity....

  To state a claim under § 1962(c), Plaintiff must allege that a person employed by or associated with an enterprise engaged in the following: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Camiolo v. State Farm Fire & Cas. Co., 334 F.3d 345, 364 (3d Cir. 2003) (quoting Sedima S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985)).

  Under § 1961(1), racketeering activity includes acts indictable under certain provisions of the federal crimes code, such as murder, kidnapping, robbery, and bribery, among others. "A 'pattern' of racketeering requires within a ten-year period the commission of at least two predicate acts bearing the indicia of 'relatedness' and 'continuity.'" Gentry v. Resolution Trust Corp., 937 F.2d 899, 907 (3d Cir. 1991). "[T]he heart of any RICO complaint is the allegation of a pattern of racketeering." Agency Holding Corp. v. Malley-Duff & Assoc., Inc., 483 U.S. 143, 154 (1987).

Plaintiff alleges in the Second Amended Complaint and in the RICO Case Statement (Doc. No. 45)[13] that Defendants engaged in several acts of misconduct in violation of RICO, including "aggravated assault, simple assault, reckless endangerment, burglary, trespassing, kidnapping, false imprisonment, unlawful restraint, theft, official oppression, unsworn falsification to authorities and extortion under color of official right." (Pl. Sec. Am. Compl. ¶ 94.)

Specifically, as to the alleged enterprise of Defendants Officer Pinkerton, Officer Gorman, and Detective Zielinski, Plaintiff alleges that they "falsely arrested and charged me with various state crimes when they knew I was acting in self-defense" and "took my first handgun," which "constitut[ed] 'robbery' and 'kidnapping.'" (RICO Statement, ¶ 2.) As to the alleged enterprise of Defendants Sergeant Frazier, Police Inspector Dooley, Captain Harte, Police Inspector Dilacqua, and Police Commissioner Ramsey, Plaintiff claims that "they improperly exonerated David Pinkerton of the internal affairs complaint" in "violat[ion] of the Hobbes [sic] Act." (Id.) As to the alleged enterprise of Defendants Lieutenant King and Officer Brehant, Plaintiff alleges that "they refused to return my second firearm" also in "violat[ion] [of] the Hobbes [sic] Act." (Id.) As to the alleged enterprise of Special Agents Meissner and Bonner, Plaintiff claims that "they intentionally committed deception to trick me in to signing an invalid consent to search my home to seize the second firearm" and "they knew that later on, the Philadelphia Police Department would refuse to return my second firearm." (Id.) Finally, as to the alleged enterprise of Defendants Attorney General Corbett and State Police Commissioner Pawlowski, Plaintiff alleges that they acted as "accomplices" to Defendants Meissner and Bonner's conduct in violation of "the Hobbes [sic] Act." (Id.)

---

[13]The Court may consider a RICO Case Statement in assessing the merits of Plaintiffs' RICO claims. De Lage Landen Fin'l Servs. v. Rasa Floors, LP, No. 08-533, 2009 WL 564627, *10 (E.D. Pa. Mar. 5, 2009).

Plaintiff argues that the various Defendants acting through the enterprises received "the benefit of 'getting away' with their misconduct" and "of not being held accountable for their actions, and therefore, continuing their employment with their respective employers." (Id. at ¶9.) As to Defendant Philadelphia Police Commissioner Ramsey, he allegedly "receives the benefit of pursuing his 'anti-gun' agenda to discourage the private ownership of firearms." (Id.)

Even construing the Second Amended Complaint in a light most favorable to Plaintiff, the Court finds that Plaintiff has failed to establish a single RICO predicate offense to support his allegations of an ongoing RICO enterprise. As stated above, § 1961 specifies a number of crimes that may constitute predicate acts of "racketeering activity" under RICO. While Plaintiff's claims track the language of the RICO statute and the crimes listed in § 1961, "it is well established that, in deciding a motion to dismiss, the Court need not 'credit a [C]omplaint's bald assertions or legal conclusions.'" Druz v. Boro of Manasquan, 2006 WL 1098029, *4 (D. N.J. April 3, 2006) (quoting In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1429-30 (3d Cir. 1997) (internal quotation marks omitted). See also Iqbal, 129 S.Ct. 1937, 1949-50 (explaining that a court is "not bound to accept as true a legal conclusion couched as a factual allegation"); Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1997) (noting that courts, when examining 12(b)(6) motions, have rejected "legal conclusions," "unsupported conclusions," "unwarranted inferences," "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations").

A review of the facts alleged by Plaintiff in the Second Amended Complaint and RICO Case Statement demonstrates that none of Plaintiff's claims of alleged RICO predicate offenses are adequately supported by factual assertions. Rather, Plaintiff offers legal conclusions and

unwarranted inferences to improperly plead offenses and a pattern of racketeering activity.

As discussed at length above, Officers Pinkerton and Gorman arrested Plaintiff with probable cause stemming from an emergency phone call by Plaintiff's neighbor and a police interview with Plaintiff. Plaintiff was neither falsely arrested nor unreasonably seized in violation of his Fourth Amendment rights, as discussed <u>supra</u>. Plaintiff's first handgun was lawfully seized during the arrest. Thereafter, Plaintiff was transported to the Fifteenth District police station. Contrary to Plaintiff's position, Defendants Pinkerton and Gorman did not "kidnap"[14] Plaintiff, but rather they acted lawfully and in accordance with typical arrest procedure.[15]

While in custody, Plaintiff voluntarily consented to a search of his home and the seizure of his second firearm and ammunition. Neither the seizure of the first handgun nor the seizure of the second handgun constituted "robbery" as defined under 18 U.S.C. § 1951 because the taking of Plaintiff's property was not unlawful.[16] Similarly, Defendants' actions did not constitute "extortion" under 18 U.S.C. § 1951 because Plaintiff was not "induced by wrongful use of actual or threatened

---

[14]As defined under 18 U.S.C. § 1291(a), kidnapping is defined in relevant part as "[w]hoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person...shall be punished by imprisonment..."

[15]Additionally, in Count Nine, Plaintiff alleges that Defendants kidnapped him when they took him into custody and transported him to the Fifteenth District of the Philadelphia Police Department. (Pl. Sec. Am. Compl. ¶100.) Plaintiff, a private individual, can not enforce state criminal laws against Defendants in this civil action before a federal court. <u>Soder v. Chenot</u>, 2007 WL 4556670, *6 (M.D. Pa. Dec. 20, 2007). In Pennsylvania, the offense of kidnapping set forth in 18 P.C. § 2901, et seq., does not create a private right of action. Accordingly, Count Nine of Plaintiff's Second Amended Complaint will be dismissed.

[16]As defined in 18 U.S.C. § 1951(b)(1), "[t]he term 'robbery' means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining."

force."[17]

While Defendants have not returned the firearms, Plaintiff has not yet availed himself of the administrative remedy available to individuals who seek the return of property after a valid arrest. Accordingly, Defendants have engaged in neither illegal nor corrupt actions, let alone a pattern of racketeering activity as required to state a claim under RICO.[18]

Because Plaintiff has failed to allege a predicate offense or pattern of racketeering activity under § 1961, et seq., the RICO claim can not be sustained. Consequently, the Court will grant Defendants' Motions to Dismiss Count Six of Plaintiff's Second Amended Complaint against the individual Defendants.[19]

---

[17]As defined in 18 U.S.C. § 1951(b)(2), "[t]he term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

[18]In addition to failing to allege a predicate offense, Plaintiff has failed to allege a pattern of racketeering activity in violation of RICO. A pattern of racketeering activity requires at least two acts of racketeering. § 1961(5). In H.J., Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 239 (1989), the Supreme Court explained that "[t]o prove a pattern of racketeering activity a plaintiff must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." Here, in light of the Court's ruling that Plaintiff has failed to allege a predicate offense in support of his allegation of an ongoing RICO enterprise, Plaintiff's claim that Defendants engaged in a pattern of racketeering activity must likewise fail. Moreover, the facts set forth in the Second Amended Complaint do not establish the threat of continued criminal activity.

[19]The Court will also dismiss Plaintiff's RICO claim against Defendants in their official capacity. Municipalities and municipal officers can not be civilly liable under RICO because civil RICO liability mandates treble damages, which are punitive in nature. Gentry, 937 F.2d at 914 ("[W]e perceive no intention of Congress to abrogate the long-established and salutary principle of common law prohibiting punitive damages against municipalities."); Pascocciello v. Interboro School Dist., 2006 WL 1284964, *7 (E.D. Pa. 2006) (applying Gentry).

d.     Pennsylvania Constitution

In Count Four, Plaintiff alleges a violation of Article 1, § 26[20] of the Pennsylvania Constitution against Defendants Pinkerton, Frazier, and Ramsey for discriminating against Plaintiff based on his race.  In Count Five, Plaintiff alleges a violation of Article 1, § 1[21] of the Pennsylvania Constitution against all Defendants for depriving Plaintiff of his freedom, property, reputation, and enjoyment of life's pleasures.  (Id., ¶92.)  Defendants argue that both Counts should be dismissed because no private cause of action for monetary damages arises out of a violation of the Pennsylvania Constitution.

"The Pennsylvania Supreme Court has not yet determined whether a private cause of action for monetary damages is cognizable under the Pennsylvania Constitution."  Hall v. Raech, 2009 WL 811503, *6 (E.D. Pa. Mar. 25, 2009); see also Harris v. Paige, 2009 WL 3030216, *4 (E.D. Pa. Sept. 22, 2009); Morales v. Taveras, 2007 WL 172392, **16-17 (E.D. Pa. Jan. 18, 2007).  As described supra, the court in Jones v. City of Philadelphia  held that no private cause of action exists under Article 1, § 8 of the Pennsylvania Constitution; however, the court implied that a cause of action could exist under other provisions of the Pennsylvania Constitution.  Jones, 890 A.2d at 1193, 1216.

In discussing Article 1, § 26, the court in Aquino v. County of Monroe reasoned that "at least where the state constitutional provision affords rights greater than those existing under the federal

---

[20]Section 26 provides: Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.

[21]Section 1 provides: All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

constitution," Jones "suggests the possibility that a claim for damages for a violation of a provision of the Pennsylvania Constitution may indeed by recognized." 2007 WL 1544980, *6 (E.D. Pa. May 24, 2007). But see Stockham Interests, LLC v. Borough of Morrisville, 2008 WL 4889023, *10 (E.D. Pa. Nov. 12, 2008) (holding, in broad terms, that there "is no private cause of action for damages arising from violations of the Pennsylvania Constitution"); Dooley v. City of Phila., 153 F.Supp.2d 628, 663 (E.D. Pa. 2001) ("Pennsylvania has no statute akin to 42 U.S.C. § 1983 that authorizes lawsuits based on violations of the Pennsylvania Constitution...."); Ryan v. General Mach. Prods., 277 F.Supp.2d 585, 595 (E.D. Pa. 2003) (finding that "the federal courts in this Circuit that have considered the issue have concluded that there is no such right [to monetary damages] under the Pennsylvania Constitution").

To determine whether a cause of action exists under the Pennsylvania Constitution, the Court would have to conduct an extensive inquiry into an unsettled area of Pennsylvania state law. See Mitchell v. Street, 415 F.Supp.2d 490, 497-98 (E.D. Pa. 2005) (explaining the uncertainty of the state of the law on bringing a claim for monetary damages under Article 1, § 1 of the Pennsylvania Constitution). Because this inquiry would "raise[] a novel or complex issue of State law," the Court declines to exercise supplemental jurisdiction over Plaintiff's §§ 26 and 1 claims pursuant to 28 U.S.C. § 1367(c)(1).[22] Trump Hotels & Casino Resorts v. Mirage Resorts, 140 F.3d 478, 487 (3d Cir. 1998) ("A court may decline to exercise supplemental jurisdiction over a state law claim where 'the claim raises novel or complex issues of state law.'").

---

[22]28 U.S.C. § 1367(c)(1) provides: "(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if - (1) the claim raises a novel or complex issue of State law,...."

In light of the unclear state of the law on Plaintiff's claims in Counts Four and Five, the Court finds that the most appropriate course of action is to decline supplemental jurisdiction over these Counts. Accordingly, Courts Four and Five will be dismissed without prejudice.

e.    Gun Registry

In Count Seventeen, Plaintiff brings a claim against Commonwealth Defendants for using an unspecified gun registry in violation of 18 Pa.C.S.A. § 6111.4.[23]  Plaintiff maintains that Defendants Meissner and Bonner used a gun registry to discover that Plaintiff owned a second handgun which was not seized upon Plaintiff's arrest.  As described supra, Plaintiff consented to a search and seizure of the second handgun upon being confronted by Defendants Special Agents Meissner and Bonner of the Philadelphia Gun Violence Task Force.

The Court will dismiss Count Seventeen because Pennsylvania's gun registry law does not provide for a private cause of action.  The mere existence of a statute does not automatically yield the existence of a corresponding private remedy.  Touche Ross & Co. v. Redington, 442 U.S. 560, 568 (1979).  Here, 18 Pa.C.S.A. § 6111.4 makes no mention of a private remedy available to a plaintiff, and the Court will not read into the state statute a private cause of action where none is explicitly set forth.  Accordingly, Count Seventeen will be dismissed.

f.    Pennsylvania Political Subdivision Tort Claims Act Immunity

In Count Eighteen, Plaintiff argues that several individual City Defendants are subject to

---

[23]18 Pa.C.S.A. § 6111.4 provides in part: "Notwithstanding any section of this chapter to the contrary, nothing in this chapter shall be construed to allow any government or law enforcement agency or any agent thereof to create, maintain or operate any registry of firearm ownership within this Commonwealth."

personal liability under the Pennsylvania Political Subdivision Tort Claims Act (PPSTCA), 42 Pa.C.S.A § 8550.[24]  This section of the PPSTCA states that where a municipal employee's actions amount to a crime, actual fraud, actual malice or willful misconduct, the agency and/or employee will lose the immunity protection provided in § 8545 of the PPSTCA.[25]  See Brown v. Muhlenberg Twp., 269 F.3d 205, 214 (3d Cir. 2001) (explaining that a public employee defendant is not entitled to immunity if the court finds that his conduct constitutes "willful misconduct"); Walker v. North Wales Borough, 395 F.Supp.2d 219, 231 (E.D. Pa. 2005) (applying the immunity statute in a case of alleged police misconduct).  In general, "[t]he jury must decide whether the individual Defendants acted with actual malice or committed 'willful misconduct' as contemplated by § 8550, such that they would lose their immunity under the PPSTCA."  Underwood v. Beaver County Children and Youth Servs., 2007 WL 3034069, at *3; see also Owens v. City of Phila., 6 F.Supp.2d 373, 394 (E.D. Pa. 1998) (explaining that § 8550 exempts claims based upon willful misconduct from the PPSTCA's grant of immunity).

Here, the Court will dismiss Count Eighteen of Plaintiff's Second Amended Complaint. Count Eighteen suffers from the same deficiency described in Count Seventeen supra, i.e., the relevant statute (here, § 8550) does not create a cause of action.  Rather, the statute simply specifies

---

[24]42 Pa.C.S.A. § 8550 provides: In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice, or willful misconduct, the provisions of sections 8545 (relating to official liability generally)...shall not apply.

[25]42 Pa.C.S.A. § 8545 provides: An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter.

when a municipal employee, as opposed to a state employee, will lose his protection of immunity. Consequently, because § 8550 does not create a private remedy, Count Eighteen will be dismissed.

g.     Punitive Damages

In Count Nineteen of the Second Amended Complaint, Plaintiff states that he is entitled to punitive damages as a result of individual Defendants' alleged misconduct. Generally, it is improper to assert punitive damages in a separate count. Giansante v. Allan Kanner Assocs., P.C., 1994 WL 517913, *3 (E.D.Pa. Sept. 20, 1994). However, doing so is not fatal to Plaintiff's recovery of punitive damages. United States Transmission Sys. v. Americus Center, Inc., 1986 WL 13838, *1 (E.D.Pa. Dec. 3, 1986).

As mentioned, Plaintiff sues Defendants in their official and personal capacity. A claim against a state or municipal officer in her official capacity is treated as a claim against the entity itself. DeBellis v. Kulp, 166 F.Supp.2d 255, 264-65 (E.D. Pa. 2001) (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985). Punitive damages cannot be awarded against municipal or state entities or municipal or state employees sued in their official capacity. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 261 (1981). Further, a federal court award of § 1983 damages against a state, state agency, or state official sued in an official capacity is barred by the Eleventh Amendment. See, e.g., Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). Accordingly, Plaintiff's claim for punitive damages against individual Defendants in their official capacity will be dismissed.

A § 1983 plaintiff, however, may recover punitive damages against an official sued in a personal capacity if the official acted with a malicious or evil intent or in callous disregard of plaintiff's federally protected rights. Mitros v. Cooke, 170 F.Supp.2d 504, 508 (E.D. Pa. 2001)

(citing Smith v. Wade, 461 U.S. 30, 56 (1983)).  The Eleventh Amendment does not grant immunity

when a § 1983 claim for damages is asserted against a state official in a personal capacity.  Hafer v.

Melo, 502 U.S. 21, 30-31 (1991).

Viewing the facts at this stage in the light most favorable to Plaintiff, the Court finds that

Plaintiff has advanced sufficient facts to allow a punitive damages claim to proceed against City

Defendants in their personal capacity.[26]  However, Plaintiff's claim of punitive damages is limited

to the remaining causes of action as noted in footnote twenty-six.[27]

## V.    CONCLUSION

For the foregoing reasons, City Defendants' Motion to Dismiss will be granted in part and

denied in part.  Commonwealth Defendants' Motion to Dismiss will be granted in its entirety.

Plaintiff amended the Complaint once in July 2009 (Doc. No. 4) and sought leave to amend the

Complaint once again in January 2010 (Doc. No. 19).  Nevertheless, "the court must inform the

plaintiff that he has leave to amend within a set period of time, unless amendment would be

---

[26]As noted in footnote four, supra, following this Opinion, the remaining Counts of Plaintiff's Second Amended Complaint against individual Defendants include: Counts Four (Pa. Constitution Article 1, § 26 Claim); Seven (False Arrest); Eight (Assault and Battery); Ten (Slander); Eleven (Malicious Prosecution); Twelve (Conversion); Thirteen (Intentional Infliction of Emotional Distress); Fourteen (Intentional Interference with Existing and Prospective Contracts); and Fifteen (Trespass to Chattels).

[27]As to Commonwealth Defendants, the Court will grant the Motion to Dismiss Count Nineteen because no substantive claims remain against them.  See Waye v. Commonwealth Bank, 846 F.Supp. 321, 330 (M.D.Pa. 1994) ("Punitive damages are an element of damages, not an independent cause of action, and as such, cannot stand alone.  If the cause of action for compensatory damages to which they are linked is dismissed, the punitive damages claim must be dismissed as well."); Waltman v. Fahnestock & Co., Inc., 792 F.Supp. 31, 33 (E.D.Pa. 1992) ("If no cause of action exists, then no independent action exists for a claim of punitive damages since punitive damages is [sic] only an *element* of damages.") (internal quotation omitted).

inequitable or futile." <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108 (3d Cir. 2002). Under all circumstances here, amendment of the Complaint as to Commonwealth Defendants would be futile. It is well-settled that not all grievances give rise to valid civil rights claims. Accordingly, Plaintiff's Complaint as to Commonwealth Defendants will be dismissed with prejudice. An appropriate Order follows.