IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL BANE, | : |
| Plaintiff, | : CIVIL ACTION |
| | : |
| | : NO. 09-2798 |
| v. | : |
| | : |
| CITY OF PHILADELPHIA, et al., | : |
| | : |
| Defendants. | : |

**MEMORANDUM**

Slomsky, J.                                                                        August 25, 2010

Before the Court is *pro se* Plaintiff Michael Bane's Motion for Entry of Judgment pursuant to Federal Rule of Civil Procedure 54(b). (Doc. No. 61.) On August 6, 2010, Defendants City of Philadelphia, Police Commissioner Charles H. Ramsey, Chief Inspector Anthony Dilacqua, Lieutenant Lisa King, Officer David Pinkerton, Officer Richard Brehant, Sergeant Benjamin Frazier, Detective Robert Zielinski, Captain David Harte, Inspector Jeanette Lake Dooley and Officer Daniel Gorman (hereinafter "City Defendants") filed a Response in Opposition to the Motion for Entry of Judgment. (Doc. No. 63.) On August 9, 2010, Plaintiff filed a Reply in Support of the Motion. (Doc. No. 64.) For the reasons that follow, the Court will deny Plaintiff Michael Bane's Motion for Entry of Judgment.

**I. BACKGROUND**

On June 18, 2010, the Court issued an Opinion and Order granting in part and denying in part City Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. Nos. 52, 53.) The Court dismissed Counts Two (Fourth Amendment Claim), Three (Second Amendment Claim),

and Six (Racketeer Influenced and Corrupt Organizations ["RICO"] Claim) as to all individual City Defendants. Various claims against City Defendants remain, including Count One (42 U.S.C. § 1983 Claim), which City Defendants did not move to dismiss. Accordingly, several individual City Defendants and the City of Philadelphia remain as parties to this action.[1]

In the same Opinion, the Court granted in its entirety the Motion to Dismiss filed by Commonwealth Defendants, including Pennsylvania Attorney General Thomas W. Corbett, Jr., Pennsylvania State Police Commissioner Frank Pawlowski, and Special Agents Charles Meissner and Eileen Bonner of the Philadelphia Gun Violence Task Force, a unit of the Pennsylvania Office of the Attorney General (hereinafter "Commonwealth Defendants"). Accordingly, the Court dismissed with prejudice Plaintiff's Second Amended Complaint as to all Commonwealth Defendants.

On June 28, 2010, Plaintiff filed a Notice of Appeal with the United States Court of Appeals for the Third Circuit. (Doc. No. 55.)[2] Shortly thereafter, Plaintiff received a letter from the Clerk of Court informing him of the appellate court's possible lack of jurisdiction in this case because this Court has not yet certified a final judgment. Consequently, on July 22, 2010, Plaintiff filed the Motion for Entry of Judgment currently before this Court. (Doc. No. 61.) Plaintiff requests that this Court certify its June 18, 2010 Order as final to allow Plaintiff to immediately appeal the decision to the Third Circuit.

---

[1]In the Second Amended Complaint (Doc. No. 28), Plaintiff brought claims set forth in nineteen (19) counts against fifteen (15) named Defendants. A comprehensive recitation of the factual background and procedural history of this case is included in the Court's June 18, 2010 Opinion. (Doc. No. 52.)

[2]On July 16, 2010, this Court granted Plaintiff's unopposed Motion to Stay Proceedings Pending Resolution of Plaintiff's Appeals. (Doc. No. 60.)

## II. LEGAL STANDARD

Fed. R. Civ. P. 54(b) provides as follows:

> (b) Judgment on Multiple Claims or Involving Multiple Parties.
>
> When an action presents more than one claim for relief - whether as a claim, counterclaim, crossclaim, or third-party claim - or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

"Ordinarily, an appeal can be taken only after a final judgment has been entered as to all of the pending claims and parties in a case." Bush v. Adams, 629 F.Supp.2d 468, 472 (E.D. Pa. 2009) (citing Morton Int'l, Inc. v. A.E. Staley Mfg. Co., 460 F.3d 470, 476 (3d Cir. 2006)). "The purpose of Rule 54(b) is to allow a court that dismisses some, but not all, of the claims or parties in a case to nonetheless enter final judgment as to the dismissed claims, allowing an immediate appeal without waiting for the remaining claims to be decided." Bush, 629 F.Supp.2d at 472.

The two requirements for entry of judgment under Rule 54(b) are: (1) that the order at issue be a final judgment, meaning the "ultimate disposition of an individual claim entered in the course of a multiple claims action," and (2) that there must be "no just reason for delay," taking into account both judicial administrative interests and the equities involved. Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 7-8 (1980) (quoting Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 436-37 (1956)); Gerardi v. Pelullo, 16 F.3d 1363, 1371 (3d Cir. 1994) ("'[J]udicial administrative interests' should be considered by a district court in determining whether a matter is ready for appeal.").

"The function of the district court under the Rule is to act as a 'dispatcher.' It is left to the sound judicial discretion of the district court to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal." Curtiss-Wright, 446 U.S. at 8. "The timing of such a release is, with good reason, vested by the rule primarily in the discretion of the District Court as the one most likely to be familiar with the case and with any justifiable reasons for delay." Mackey, 351 U.S. at 437.

In general, "certification pursuant to this rule is not to be entered routinely." Glaziers v. Newbridge Secs., Inc., 823 F.Supp. 1188, 1190 (E.D. Pa. 1993). Courts must "assure that application of the Rule effectively 'preserves the historic federal policy against piecemeal appeals.'" Curtiss-Wright, 446 U.S. at 8 (internal quotation omitted); see Sussex Drug Prods. v. Kanasco, Ltd., 920 F.2d 1150, 1153 (3d Cir. 1990) ("Disfavoring piecemeal appeals is a long-standing policy of the federal courts."); Allis-Chalmers Corp. v. Phila. Elec. Co., 521 F.2d 360, 363 (3d Cir. 1975) (explaining that Rule 54(b) was designed "to strike a balance between the undesirability of piecemeal appeals and the need for making review available at a time that best serves the needs of the parties").

## III. DISCUSSION

In the Opinion and Order dated June 18, 2010, the Court dismissed numerous claims against City Defendants and all claims against Commonwealth Defendants. As mentioned above, the Court dismissed Counts Two (Fourth Amendment Claim), Three (Second Amendment Claim), and Six (RICO claim) of Plaintiff's Second Amended Complaint against all individual Defendants. The remaining Counts include: Count One (42 U.S.C. § 1983 claim brought pursuant to Monell v. Dep't of Social Servs. of City of New York, 436 U.S. 658 (1978)) against the City of Philadelphia, and Counts Four (Pa. Constitution Article 1, § 26 Claim), Seven (False Arrest), Eight (Assault and

Battery), Ten (Slander), Eleven (Malicious Prosecution), Twelve (Conversion), Thirteen (Intentional Infliction of Emotional Distress), Fourteen (Intentional Interference with Existing and Prospective Contracts), Fifteen (Trespass to Chattels), and Nineteen (Punitive Damages) against individual City Defendants. Plaintiff argues that the Court should certify judgment under Rule 54(b) on the dismissed claims and parties because the Court's June 18, 2010 decision was a "final judgment" and justice requires a finding that equities to a *pro* se litigant outweigh judicial administrative interests.

"A district court has the discretion to certify a judgment for immediate appeal only when it is 'final' within the meaning of Rule 54(b), which means that the judgment disposes entirely of a separate claim or dismisses a party entirely." In re: Southeast Banking Corp., 69 F.3d 1539, 1547 (11th Cir. 1993); see also Zavala v. Wal-Mart Stores, Inc., No. 03-5309, 2007 WL 1134110, **1-2 (D.N.J. Apr. 16, 2007) (describing standards of finality under Rule 54(b)).

Assuming *arguendo* that the June 18, 2010 Order is a "final judgment," then the true crux of the issue before the Court is "whether there is any just reason for delaying appeal until disposition of [Plaintiff's] claims against the remaining defendants." Carter v. City of Phila., 181 F.3d 339, 346 (3d Cir. 1999). The Third Circuit has set forth five factors to consider when assessing if there is a "just reason for delay" under Rule 54(b):

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final; [and] (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

Berckeley Investment Group, LTD. v. Colkitt, 455 F.3d 195, 203 (3d Cir. 2006) (quoting Allis-

Chalmers Corp., 521 F.2d at 364). In this case, the most pertinent Berckeley factors are factor one: the relationship between the adjudicated and unadjudicated claims and factor three: the possibility that the reviewing court might be obliged to consider the same issue a second time.

Here, the adjudicated claims are factually and legally intertwined with the unadjudicated claims, especially Plaintiff's Section 1983 claim brought pursuant to Monell, 436 U.S. 658 (1978) (Count One of Plaintiff's Second Amended Complaint). Moreover, certification at this stage of the litigation would be inappropriate and premature because of the high risk that the appellate court would be obliged to consider for a second time the same issues arising from the same facts between the same parties. See, e.g., 10 James Wm. Moore, Moore's Federal Practice, § 54.22[2][b], 54-51 (3rd Ed. 2010) ("[F]actual interdependence of the adjudicated and unadjudicated claims will result in the court of appeals rejecting the Rule 54(b) judgment and dismissing the appeal for lack of jurisdiction.").

The gravamen of Plaintiff's Monell claim is that the City of Philadelphia failed to "[t]rain its police officers to be able to determine properly when probable cause exists to detain, arrest and charge individuals with violations of the law" and that the City failed to "[p]revent police officers from allowing their personal political opinions to influence decisions made in their official capacity." (Sec. Am. Compl. ¶¶ 71(C), (E).) Throughout Plaintiff's Second Amended Complaint, and as discussed fully in the Court's June 18, 2010 Opinion, Plaintiff attributes the alleged unreasonable seizure of his firearms to the "open culture of hostility in the Philadelphia Police Department towards the private ownership of firearms." (Id. at ¶ 49.) Plaintiff stresses that individual Defendants were motivated by the "well known, but unofficial attitude in the Philadelphia Police Department that private citizens should not own firearms." (Id. at ¶ 51.)

In his Complaint, Plaintiff charged that not only individual City Defendants who remain in this case, but also Commonwealth Defendants who have been dismissed, furthered "their personal beliefs that private citizens should not own firearms" when they arrested and prosecuted him. (Id. at ¶ 75.) For example, in Count Two (Fourth Amendment Claim), Plaintiff asserts that Special Agents Meissner and Bonner of the Philadelphia Gun Violence Task Force deceived Plaintiff into surrendering his firearm in order "to perpetuate the 'anti-gun' culture in Philadelphia politics and police practice." (Id. at ¶ 78.) Similarly, in Count Three (Second Amendment Claim), Plaintiff repeats the assertion that the Special Agents acted to promote "anti-gun culture." In essence, the alleged violations of Plaintiff's Second and Fourth Amendment rights form the basis of his Section 1983 Monell claim. Accordingly, it is clear that Plaintiff's remaining Section 1983 Monell claim against the City of Philadelphia is inextricably intertwined with the dismissed claims against Commonwealth Defendants that Plaintiff now wishes to challenge on appeal.

As the Third Circuit explained in Sussex, supra: "The interlocking factual relationship of the various counts lead[s] to the likelihood that a subsequent appeal would again seek review of the issues presented here [and] also suggests that it was not in the interests of sound judicial administration for the district court to certify this judgment as final." 920 F.2d at 1156; see also 10 Moore's Federal Practice, § 54.23[1][a], 54-61 ("Many courts of appeals reviewing Rule 54(b) judgments have stated that when the facts or legal issues underlying both the adjudicated and unadjudicated claims significantly overlap, a substantial risk of duplicative appellate review is created, and that therefore the district court abused its discretion in entering the judgment."); Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 21-22 (2d Cir. 1997) (district court erroneously certified a dismissed claim that contained the same facts as an unadjudicated claim).

Plaintiff requests the Court to consider his status as a *pro se* litigant who seeks final resolution of his civil rights claims in deciding the instant Motion. Plaintiff submits that he will suffer hardship if he must delay his appeal until the completion of a trial on the merits of his remaining claims. Finally, Plaintiff is not proceeding *in forma pauperis* and has already paid the required filing fee to perfect an appeal to the Third Circuit. It is unlikely that Plaintiff's fee will be refunded if this Court denies Plaintiff's Motion for Entry of Judgment under Rule 54(b). See Porter v. Dept. of Treasury, 564 F.3d 176, 179 (3d Cir. 2009) ("It is of no consequence whether an appeal is voluntarily dismissed, dismissed due to a jurisdictional defect, or dismissed on the merits - appellants are not entitled to the return of their filing and docketing fees.").

While the Court does not wish to see any litigant lose a filing fee under these circumstances, nevertheless, under the law, the Court must weigh the interests of judicial administration and the equities to litigants in deciding whether to certify a judgment as final. The Court is persuaded in this case that the interests of judicial administration are paramount. Plaintiff's adjudicated claims under the Fourth Amendment, Second Amendment, and RICO are part and parcel of Plaintiff's unadjudicated Section 1983 Monell claim. A premature entry of judgment would run the risk of presenting duplicative claims before the appellate court. This Court must heed the mandate that piecemeal appeals are greatly disfavored in federal courts. As the Third Circuit directed in Gerardi, supra:

> [A] district court should be conservative in invoking Rule 54(b) to certify a judgment as final because if an aggrieved party appeals following the certification, the district court effectively will be electing to control the docket of a court of appeals. Furthermore, a court should be particularly cautious in certifying as final a judgment on a claim which is not truly distinct from the claims on remaining issues, for even if the certified judgment is inherently final, the facts

> underlying the claim resulting in that judgment may be intertwined
> with the remaining issues.

Gerardi, 16 F.3d at 1372.

## IV. CONCLUSION

Plaintiff has failed to demonstrate that there is no just reason for delaying his appeal until the disposition of all of Plaintiff's claims. Consequently, the Court will deny Plaintiff's motion to certify the Court's June 18, 2010 Order as a final judgment for immediate appeal. An appropriate Order follows.